MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO, P.C.
666 Third Avenue
New York, New York 10017
Tel. No. 212-935-3000
Fax. No. 212-983-3115
Michael L. Schein, Esq. (MS 0241)

*Attorneys for No. 5 Times Square Development LLC*

Return Date: September 30, 2005
10:00 a.m

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
In re

TIMES SQUARE ENTERPRISES, LLC,

                Debtor.

Chapter 11

Case No. 05-16502 (RDD)

---------------------------------------------------------------- x

## MOTION OF NO. 5 TIMES SQUARE DEVELOPMENT LLC FOR ORDER (I) COMPELLING DEBTOR TO IMMEDIATELY PAY POST-PETITION RENT UNDER LEASE AND (II) VACATING AUTOMATIC STAY TO PURSUE REMEDIES UNDER LEASE

No. 5 Times Square Development LLC ("Boston Properties" or "Landlord"), by and through its attorneys Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., hereby moves (the "Motion"), pursuant to 11 U.S.C. §§ 105(a), 362(d)(1) and 365(d)(3), for entry of an order, substantially in the form attached hereto, (i) compelling the above-captioned debtor and debtor-in-possession (the "Debtor") to timely perform its obligations under the Lease (as defined below), including the immediate payment to Boston Properties of all outstanding post-petition rent, and (ii) vacating the automatic stay to allow Boston Properties to pursue its remedies under the Lease as a result of the Debtor's post-petition default. In support thereof, Boston Properties respectfully states as follows:

## BANKRUPTCY CASE

1.  On August 15, 2005 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2.  The Debtor is operating its business and managing its property as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## JURISDICTION

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 362 and 365 of the Bankruptcy Code. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.  Times Square Lease**

4.  Prior to the Petition Date, Boston Properties, as landlord, and the Debtor, as tenant, entered into that certain Indenture of Lease dated March 24, 2003 (the "Lease"),[1] pursuant to which, inter alia, the Debtor operates, subject to certain use conditions set forth in the Lease, a full service restaurant known as the "Times Square Brewery Restaurant" on the ground and second floors of premises (the "Premises") located at 5 Times Square, New York, New York (the "Building").

5.  Pursuant to the terms of the Lease, and in exchange for use and occupancy of the Premises, the Debtor is required to pay to Landlord, on the first day of each calendar month, rent

---

[1]  A copy of the Lease is attached as Exhibit A to the Affidavit of Tom A. Javits, sworn to on September 12, 2005 (the "Javits Aff.")

and additional charges, including, without limitation, common area maintenance charges, of no less than $119,350.33. See Lease at §§ 4.2, 4.3, 4.4; Javits Aff., at ¶3. The Debtor is also responsible to pay to the Landlord during the calendar year certain other charges, as "additional rent," including, without limitation, the Debtor's share of Business Improvement District expenses. Id.

**B.     Pre-Petition Defaults**

6.      As set forth more fully in the Javits Affidavit, prior to and at the time of its bankruptcy filing, the Debtor was repeatedly in default under the Lease for, among other things, failure to pay rent as and when due, failure to pay contractors as and when due (resulting in filing of mechanics liens) and failure to comply with various operating covenants set forth in the Lease. Javits Aff., at ¶¶4-5. Specifically, in calendar years 2004 and 2005 the Debtor failed, at least eight (8) times, to make full and timely payment of rent. Additionally, on at least three (3) occasions during that same time period the Debtor's rent checks were not honored by the bank. Such breaches have not only resulted in "Events of Default" under the Lease, but have led to the Landlord's commencement on June 21, 2005 of a non-payment proceeding against the Debtor, styled No. 5 Times Square Development LLC v. Times Square Enterprises LLC d/b/a Times Square Brewery Restaurant, Index No. L&T 76689/2005, pending in Civil Court of the City of New York, County of New York (the "Summary Proceedings"), for Debtor's failure (again) to pay rent under the Lease. However, the day before trial was to begin, the Debtor (as its sole basis) filed this bankruptcy case.[2]

---

2       As of the Petition Date, the Debtor was indebted to Boston Properties for unpaid amounts under the Lease aggregating approximately $288,000.

7. In addition to its failures to pay the Landlord, the Debtor repeatedly failed to make payment, let alone timely, to its various contractors. In fact, in 2004 at least six (6) contractors filed mechanic's liens against the Building, aggregating in excess of $600,000, because of the Debtor's failure to make payments in respect of work performed on the Premises. One of those contractors also commenced a foreclosure action against, among others, the Debtor and the Landlord, which required the Landlord to, among other things, incur significant costs to retain counsel to defend against the proceeding. As a result, the Debtor's failure to timely discharge or bond such liens was a further violation of the Lease by the Debtor.

8. The Debtor's pre-petition defaults have also resulted from its failure to comply with maintenance and industry inspection requirements mandated by the Lease and applicable law. These problems on the Premises have included, among other things, mold and fungi growth due to the Debtor's failure to control water accumulation and fire damage due to the Debtor's failure to adequately maintain its kitchen exhaust equipment. Moreover, such "operating failures" have also caused damage to other tenant's premises in the Building, including, for example, water damage to one tenant's premises as a result of the Debtor's failure to maintain proper heating levels. As a result, the Landlord is very concerned that the Debtor's ongoing failure to maintain its Premises could result in similar and further problems for other tenants and areas of the Building.

9. Further, the Debtor has also failed, despite communications from the Landlord, to obtain necessary final approvals from various New York City agencies regarding, among other things, the Debtor's sprinkler systems, their ventilation systems and their fire suppression (Ansul) systems. These ongoing violations have prevented the Landlord from obtaining a permanent certificate of occupancy with respect to the Building.

**C.     Post-Petition Defaults**

10. Most importantly, since the Petition Date the Debtor has <u>NOT</u> made *any* rent payments to the Landlord due under the Lease, *despite its obligations under the Lease and as a debtor-in-possession*.[3]  <u>See</u> Lease at §§ 4.2, 4.3, 4.4; <u>see also</u> 11 U.S.C. § 365(d)(3). Consequently, on September 1, 2005 Boston Properties served written notice on the Debtor of such Lease default resulting from the Debtor's failure to pay, as and when due, its September 2005 rent and the post-petition portion of its August 2005 rent.[4]  <u>See</u> Lease at §§ 4.2, 16.1. Notwithstanding such notice, the Debtor has not cured its default to date (let alone within the time limit required under the Lease) and, accordingly, by letter dated September 7, 2005 Boston Properties advised the Debtor that such payment failure constituted an "Event of Default" under the Lease.[5]  <u>Id.</u> at § 16.1. Accordingly, Boston Properties now seeks to exercise its rights and remedies under the Lease and as a matter of law. <u>Id.</u> at § 16.2.

### RELIEF REQUESTED

11. By this Motion, Boston Properties respectfully requests that this Court enter an order, substantially in the form attached hereto, compelling the Debtor (a) to pay to Boston Properties, within two (2) business days after entry of such order and in immediately available funds, all outstanding post-petition rent and related charges due and owing under the Lease, and (b) to timely perform, as and when due, all ongoing obligations under the Lease. Additionally, to the extent the Debtor fails to timely and fully comply with the foregoing relief, Boston

---

[3] As of the date hereof, such unpaid post-petition amounts aggregate approximately $184,000, the details of which are set forth on <u>Exhibit B</u> to the Javits Aff.  The Landlord reserves its right to assert such additional amounts that may become due and owing under the Lease, including, without limitation, accruing late charges and attorneys' fees and expenses as provided under the Lease.

[4] A copy of the default notice is attached as <u>Exhibit C</u> to the Javits Aff.

[5] A copy of the September 7th letter is attached as <u>Exhibit D</u> to the Javits Aff.

Properties requests that this Court prospectively vacate the automatic stay to allow Boston Properties to exercise its remedies under the Lease, including, without limitation, continuing the prosecution of the Summary Proceedings.

A. **<u>Compel Payment of Post-Petition Obligations.</u>**

12. Recognizing the unique and difficult position faced by landlords when a non-paying tenant has filed for bankruptcy protection, Congress enacted section 365(d)(3) of the Bankruptcy Code, and in so doing, made clear that such section:

> would lessen these problems by requiring the trustee to perform <u>all</u> the obligations of the debtor under a lease of nonresidential real property <u>at the time required in the lease</u>. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

H.R. Rep. No. 882, 95th Cong., 2nd Sess. (remarks of Senator Hatch) (emphasis added).

13. Since its enactment, it is well-settled among the courts that section 365(d)(3) mandates the timely performance by a debtor-tenant of all of its post-petition obligations under a nonresidential real property lease, with such Bankruptcy Code section providing, in relevant part, that:

> [t]he trustee shall <u>timely</u> perform <u>all</u> the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3) (emphasis added); <u>see also</u> <u>In re Montgomery Ward Holding Corp.</u>, 268 F.3d 205, 211 (3d Cir. 2001) (section 365(d)(3) mandates that debtor be required to pay all lease obligations "at the time required in the lease"); <u>In re Pudgies Dev. of N.Y., Inc.</u>, 239 B.R. 688, 694 (S.D.N.Y. 1999) (District Court affirmed bankruptcy court finding that § 365(d)(3) requires timely payment of all post-petition lease obligations); <u>In re Pacific Atlantic Trading Co.</u>,

27 F.3d 401 (9th Cir. 1994) (§ 365(d)(3) requires post-petition rent to be paid timely as rent becomes due under lease pending assumption or rejection of lease).

14. As case law and legislative history makes clear, Boston Properties is entitled to the immediate payment by the Debtor of all outstanding post-petition rent due under the Lease and, therefore, should not be forced to become an involuntary lender by providing unpaid tenancy to the Debtor. To require otherwise is contrary to the spirit and express language of section 365(d)(3). See Pudgies Dev., 239 B.R. at 694 (legislative history and plain meaning of § 365(d)(3) require immediate payment of lease obligations to protect landlords during post-petition, pre-rejection time period); In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 882-83 (Bankr. E.D.N.Y. 1986) ("The command of Section 365(d)(3) is clear and unambiguous. It means exactly what it says."). Accordingly, this Court should direct the Debtor to immediately pay to the Landlord, in immediately available funds, all outstanding post-petition amounts due and owing under the Lease.

15. Additionally, to further protect the Landlord and to ensure the Debtor's future and timely compliance with the terms of the Lease, this Court should also expressly direct the Debtor going forward to timely and fully perform, as and when due, *all* obligations under the Lease, including, without limitation, payment of rent such that it is <u>received</u> by the Landlord on or before the first (1st) day of each calendar month of the term. This additional protection is warranted under the circumstances given the Debtor's long and repeated history of defaults. Javits Aff., at ¶¶4-8.

16. Accordingly, for the forgoing reasons, the Debtor should be directed to immediately pay to Boston Properties all outstanding post-petition rent and related charges due and owing under the Lease, as well as to fully and timely comply, going forward, with all of its obligations under the Lease.

B.   **Vacating of Automatic Stay to Exercise Lease Rights**

17. To the extent the Debtor fails to immediately pay to Boston Properties all outstanding post-petition Lease amounts or otherwise fails to timely and fully perform, going forward, all of its obligations under the Lease, including, without limitation, payment of rent no later than the first (1st) day of the calendar month, Boston Properties should also be granted, without further request from the Court, relief from the automatic stay for "cause" under section 362(d)(1) of the Bankruptcy Code to permit the Landlord to exercise its remedies under the Lease, including, without limitation, to continue prosecution of the Summary Proceedings on account of such defaults.

18. Section 362(d)(1) provides, in relevant part, that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay --
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).

19. For purposes of section 362(d)(1), the term "cause" has no clear definition and should be determined on a case by case basis, thereby vesting a bankruptcy court with the discretion to find "cause" for a variety of reasons. See, e.g., In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1991); Matter of Henry, 173 B.R. 878, 882 (Bankr. D.N.J. 1993); Bankruptcy Est. of B.J. McAdams, Inc. v. Ralston Purina Co., 154 B.R. 809, 811 (N.D. Ga. 1993) (citing Brown v. Navarro, 743 F.2d 1069, 1083 (5th cir. 1984)); Baldino v. Wilson (In re Wilson), 116 F.3d 87, 88 (3d Cir. 1997). Thus, relief for "cause" under section 362(d)(1) requires a balancing of equities between the creditor who seeks relief from the automatic stay and the debtor opposing the relief. In re Donnington, Karcher, Salmond, Ronan & Rainone,

P.A., 194 B.R. 750, 761 (D.N.J. 1996); In re Todd Shipyards Corp., 92 B.R. 600, 602 (Bankr. D.N.J. 1988).

20. Here, the equities favor granting prospective relief from the automatic stay. As described above and more fully in the Javits Aff., the Debtor has repeatedly been in default (both monetary and non-monetary) under the Lease since residing in the Premises. With respect to payment defaults, the Debtor has failed on at least 8 occasions to make full payment of rent when due and on at least 3 additional occasions the Debtor's rent checks have bounced. Such breaches have not only resulted in "Events of Default" under the Lease, but as discussed above, have led to the Landlord's commencement and prosecution of Summary Proceedings to terminate the Lease and evict the Debtor.

21. Further, the Debtor's payment failures have also resulted in multiple filings of mechanic's liens by contractors against the Building in violation of covenants of the Lease. During a seven month period alone, mechanic's liens were filed by at least 6 contractors for non-payment by the Debtor of in excess of $600,000. In fact, one of those contractors commenced a foreclosure action against, among others, the Debtor and the Landlord, requiring the Landlord to retain counsel to defend the action.[6]

22. Finally, since being in operation the Debtor has also failed to comply with maintenance and industry inspection requirements mandated by the Lease and applicable law, resulting in, among other breaches, several operating failures that have caused damage not only to the Premises but to other tenant's locations in the Building. Such problems have included,

---

[6] Moreover, the Debtor's trash hauler just recently informed the Landlord that as a result of the Debtor's non-payment of certain post-petition amounts, it would no longer provide such services for the Debtor. This could result in, among other things, a health hazard in the Building, in violation of both the Lease and NYC health code provisions.

among other things, mold and fungi growth due to Debtor's failure to control water accumulation, fire damage to the Premises due to inadequate maintenance by Debtor of its kitchen exhaust equipment, and water damage to other tenants' premises due to Debtor's failure to maintain proper heating levels.

23. These and other defaults and violations by the Debtor, including, without limitation, the Debtor's failure to obtain necessary final approvals from various New York City agencies regarding, among other things, the Debtor's sprinkler systems, their ventilation systems and their fire suppression (Ansul) systems, evidence an ongoing inability of the Debtor to successfully operate and, more importantly, to comply with the provisions of the Lease. As a result, the Landlord has been and continues to be prejudiced, both pre- and post-petition, by the Debtor's actions and/or failures to act.

24. Accordingly, "cause" exists under § 362(d)(1) to prospectively vacate the automatic stay to permit Boston Properties, without further relief from this Court, to exercise its rights and remedies under the Lease, including continuation of its prosecution of the Summary Proceedings.[7] See In re Rocchio, 125 B.R. 345, 347 (Bankr. R.I. 1991) (failure of debtor to pay post-petition rent, together with lack of evidence to show ongoing compliance with Lease terms, constituted "cause" under § 362(d)(1) to vacate automatic stay); Pudgies Dev., 239 B.R. at 696 (stay relief available remedy to landlord where debtor-tenant fails to comply with § 365(d)(3)). See also In re Carroll, 903 F.3d 1266, 1271 (2d Cir. 1990) (well-settled that Bankruptcy Code does not prevent the termination of an executory contract by its own terms).

---

[7] As set forth in the proposed Order, Boston Properties requests that, if the Debtor fails to comply with the relief granted by the Court or required under in the terms of the Lease, on three (3) days written notice of such default to the Debtor (after the applicable cure period, if any), Landlord can immediately exercise its remedies under the Lease, including continuation of the Summary Proceedings.

## NOTICE

25. Notice of this Motion has been provided to (a) counsel to the Debtor, (b) the Office of the United States Trustee, (c) the Official Committee of Unsecured Creditors, if any, and if no such committee has been formed, then to creditors included on the list filed by the Debtor pursuant to Bankruptcy Rule 1007(d), and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002. Boston Properties respectfully submits that no other or further notice is required.

## WAIVER OF MEMORANDUM OF LAW

26. As this Motion raises no novel issues of law and the authorities relied upon are set forth herein, Boston Properties respectfully requests that the Court dispense with the requirement pursuant to Local Bankruptcy Rule 9013-1(b) that a memorandum of law be submitted herewith.

27. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Boston Properties respectfully requests that this Court enter an order (a) directing the Debtor (i) to pay to the Landlord, within two (2) business days after entry of such order, all unpaid post-petition rent and related charges, and (ii) to timely perform, as and when due, all ongoing obligations under the Lease, and to the extent the Debtor fails to immediately pay to Boston Properties all outstanding post-petition Lease amounts or otherwise fails to timely and fully perform, going forward, all of its obligations under the Lease, (b) vacating the automatic stay, on three (3) days' notice, to allow Boston Properties to exercise its remedies under the Lease, including, without limitation, to continue prosecution of the Summary Proceedings, and (c) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       September 12, 2005 *Attorneys for No. 5 Times Square Development LLC*

                                          MINTZ LEVIN COHN FERRIS GLOVSKY
                                            AND POPEO P.C.

                                        By: /s/ Michael L. Schein
                                             Michael L. Schein (MS-0241)
                                             666 Third Avenue
                                             New York, New York  10017-4011
                                             Tel. No. 212-935-3000
                                             Fax. No. 212-983-3115

NYC 337200v.2